UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHIARA BIANCHINI,<br><br>                       Plaintiff,<br><br>        -against-<br><br>THE HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>                    Defendant. | 24-CV-6535 (JGLC)<br><br>**<u>OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Chiara Bianchini brings this suit against Defendant The Hartford Life and Accident Insurance Company ("Hartford"), alleging breach of contract based on Hartford's denial of Plaintiff's claim for long-term disability benefits under Plaintiff's employer's Group Long Term Disability Plan. Hartford now moves for summary judgment and dismissal of the action for failure to exhaust administrative remedies. Simultaneously, Plaintiff moves to supplement the administrative record with live testimony at trial. For the reasons stated herein, the Court denies both Defendant's Motion for Summary Judgment and Plaintiff's Motion to Supplement.

## BACKGROUND

The facts outlined below are taken from the parties' statements submitted pursuant to Local Civil Rule 56.1 (*see* Defendant's Rule 56.1 Statement (ECF No. 41) ("Def. 56.1"); Plaintiff's Rule 56.1 Statement (ECF No. 48) ("Pl. 56.1")) and accompanying exhibits. The Court only cites a 56.1 statement where (1) the parties have agreed the factual assertion is undisputed; and (2) the factual assertion is properly supported by a citation to the record. These citations include instances where a party does not truly "dispute" an assertion, but merely seeks to qualify or add their own "spin" to it. *See Kaye v. New York City Health and Hosps. Corp.*, No.

18-CV-12137 (JPC), 2023 WL 2745556, at *2 n.2 (S.D.N.Y. Mar. 31, 2023). The Court otherwise cites to the exhibits filed by the parties in connection with the instant motions, and any relevant pleadings in this case. *Id.*

## I.    Factual Background

Plaintiff Chiara Bianchini "was a director of digital marketing and social media advertising" at Blackstone Administrative Services Partnership, L.P. ("Blackstone"). Pl. 56.1 ¶¶ 1, 7. Plaintiff tested positive for COVID-19 in March 2020 and April 2022. *Id.* ¶ 8. She thereafter began to experience symptoms of long COVID.[1] *Id.* ¶ 11. Around February 2023, Plaintiff began counseling services with a psychiatric nurse practitioner ("PMHNP"), and stated that she wanted to "get better in time for her wedding" in April 2023. *Id.* ¶ 10. During her first visit with the PMHNP, Plaintiff stated that she was "struggling to work," "ha[d] no energy to complete job function," and was "deciding to quit her job [for 6 months] to recover" from her long COVID symptoms and start working part-time. *Id.* ¶ 11. Subsequently, in March 2023, Plaintiff decided to "take time off from her job to focus on health." *Id.* ¶ 12.

In March 2023, Plaintiff filed a claim for short-term disability ("STD") benefits. *Id.* ¶ 13. By letter dated March 27, 2023, Hartford denied Plaintiff's STD claim. *Id.* ¶ 15. Plaintiff appealed Hartford's adverse determination. *Id.* ¶ 16. In response, Hartford obtained independent peer reviews from an internist and a neurologist. *Id.* In August 2023, Hartford upheld the denial of Plaintiff's STD claim. *Id.* ¶ 17.

---

[1] "Long COVID, long-haul COVID, post-COVID-19 condition, chronic COVID, and post-acute sequelae of SARS-CoV-2 are all names for the health problems that some people experience a few months after a COVID-19 diagnosis. Symptoms of long COVID may be the same as or different than symptoms of COVID-19." *See Long COVID Research and Resources*, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/covid/long-covid (Dec. 20, 2024).

In November 2023, Plaintiff filed a claim for long-term disability ("LTD") benefits under the Group Long Term Disability Plan ("Plan") for Blackstone employees. *Id.* ¶¶ 1, 19. The Plan's benefits are funded by group disability income insurance policy number GLT-681898. *Id.* ¶ 1. The Plan contains a section entitled "ERISA Information," which states that it "serves to meet ERISA requirements and provides important [information] about the Plan." *Id.* ¶ 2 (citing ECF No. 55 ("AR") at 35). The ERISA Information section includes a provision on "Appealing Denials of Claims for Benefits" that begins with:

> On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court, with the exception of an action under the deemed exhausted process described above.

Pl. 56.1 ¶ 4. This section also states that:

> The Insurance Company will make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 day period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances . . . . If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date the Insurance Company receives your response to the request.

*Id.* ¶¶ 5–6.

In Plaintiff's November 2023 LTD claim, Plaintiff stated that she first noticed the symptoms of "extreme fatigue, headaches, blurred vision, heart palpitations, no control over body heat, brain fog, post exertion malaise, dizziness, vertigo, cystitis, inflammation" in May 2022. Pl. 56.1 ¶ 19–21. Plaintiff also reported suffering severe cognitive impairment due to the ongoing brain fog, post-exertion malaise, headaches, and blurred vision. *Id.* ¶ 22.

On December 11, 2023, Hartford denied Plaintiff's claim for LTD benefits, after considering, *inter alia*, the peer reviews performed by the independent internist and neurologist. *Id.* ¶¶ 16, 23. Hartford's denial letter stated that Plaintiff's LTD claim was denied because "there are no restrictions or limitations supported that would prevent [Plaintiff] from performing sedentary work." *Id*. ¶ 24. The letter advised Plaintiff that she had 180 days from receipt of the letter to appeal the decision. *Id.* ¶ 25.

On June 7, 2024, Plaintiff timely appealed Hartford's adverse LTD claim determination. *Id.* ¶ 26. Plaintiff submitted new evidence, including personal statements by Plaintiff and her husband, and a May 8, 2024 neuropsychological evaluation, with her appeal. *Id.* ¶ 27. On June 27, 2024, Hartford sent Plaintiff's counsel a letter requesting additional information, specifically the raw neuropsychological testing data from Plaintiff's provider, in connection with Plaintiff's appeal. *Id.* ¶ 28. Hartford wrote to Plaintiff requesting that Plaintiff "provide the scaled scores/standardized scores of all tests administered" by Plaintiff's neuropsychologist, as well as "[a]ny diagnosis and/or treatment records for a mental health condition for which [Plaintiff] received care." *Id.* (citing AR at 81). In this letter, Hartford advised Plaintiff that she should submit the requested information by July 7, 2024, and that if it was not submitted by that date, Hartford would proceed by starting its review on July 8, 2024, unless additional time was requested. *Id.* ¶ 29; AR at 81.

On July 3, 2024, Plaintiff's counsel sent Hartford a letter stating that Plaintiff had "no objection to providing" Hartford with the requested neuropsychological testing data, but that Plaintiff's provider would only "release this raw data to another, licensed psychologist." Pl. 56.1 ¶ 30. Plaintiff's counsel suggested that Hartford "have its neuropsychologist contact [Plaintiff's neuropsychologist] and request that [Plaintiff's neuropsychologist's] raw data for [Plaintiff] be

sent directly to [Defendant's neuropsychologist]." AR at 275. Accordingly, on July 10, Hartford wrote directly to Plaintiff's provider to advise that its "Medical Director-Neuropsychologist" was requesting the data. Pl. 56.1 ¶ 31.

On July 22, 2024, Hartford wrote to Plaintiff, stating that it could not "make a decision on [Plaintiff's] appeal right now because [Hartford was] waiting for information from [Plaintiff's] physician." *Id.* ¶ 32 (quoting AR at 98). Hartford stated that it "need[ed] to get more information from" Plaintiff's neuropsychologist, and that "[t]o speed up the process, we're requesting this information directly from" him. *Id.* Hartford noted that it was Plaintiff's "responsibility to ensure we get it by 08/01/2024." *Id.* Hartford stated that it would continue its review as soon as Hartford received the requested information or by August 1, 2024, whichever came sooner, and would "make a decision no later than 45 days after [it] receive the information [it] requested." AR at 98. On July 31, 2024, Plaintiff's neuropsychologist provided the data to Hartford. Pl. 56.1 ¶ 33.

Subsequently, Hartford obtained an independent peer review report, dated August 21, 2024, from a psychiatrist. *Id.* ¶ 34. In her report, Hartford's independent psychiatrist stated that Plaintiff "likely did not have functional impairment due to cognitive impairment." *Id.* ¶ 35. Further, on the same date, Defendant obtained an independent peer review from an internist. *Id.* ¶ 36. The internist concluded that "[d]espite [Plaintiff's] complaints of long-haul COVID syndrome, there is a lack of clear clinical data to support these complaints to the degree that would be impairing the claimant from functioning." *Id.* ¶ 37.

On September 3, 2024, Hartford sent these independent peer review reports to Plaintiff's counsel. *Id.* ¶ 38. Hartford stated that before it could "make a final decision on [Plaintiff's] appeal, [it was] required to provide [Plaintiff] with the enclosed information and give [her] a

reasonable opportunity to respond." *Id.* ¶ 39. Hartford stated that Plaintiff had until September 12, 2024, to review the information and provide any response or additional information, or to request an extension. *Id.*

On September 5, 2024, Hartford's appeal specialist contacted Plaintiff's counsel, and "confirmed they received the [independent medical review] reports and [Defendant was] still reviewing and [would] respond." *Id.* ¶ 40. On the same day, Plaintiff's counsel provided Defendant with a copy of the complaint in this action, which had been filed on August 29, 2024. *Id.* ¶ 41. Plaintiff's counsel's letter did not state that Plaintiff did not intend to submit additional information in response to Hartford's independent peer reviews. *Id.* ¶ 42. Plaintiff did not submit additional information by September 12, 2024. *Id.* ¶ 43. Thereafter, on September 16, 2024, Hartford upheld its initial determination to deny Plaintiff's claim for LTD benefits. *Id.* ¶ 44.

## II.    Procedural History

Plaintiff initiated this action asserting a single breach of contract claim under 29 U.S.C. § 1132(a)(1)(B). ECF No. 1. ¶¶ 29–33. On August 1, 2025, Defendant moved for summary judgment, arguing that Plaintiff failed to exhaust administrative remedies. ECF Nos. 39–40. Defendant also filed its Rule 56.1 Statement. Def. 56.1. Also, on August 1, 2025, Plaintiff filed a Motion to Supplement the Administrative Record to Allow for Live Testimony. ECF No. 44. On August 26, 2025, Defendant opposed Plaintiff's Motion to Supplement. ECF No. 46.

On September 2, 2025, Plaintiff opposed Defendant's Motion for Summary Judgment. ECF No. 47. Plaintiff also filed her Counter-Statement to Defendant's 56.1 Statement. Pl. 56.1. On September 29, 2025, Defendant filed its reply memorandum in support of its Motion for Summary Judgment, ECF No. 51, and Plaintiff filed her reply memorandum in support of her

Motion to Supplement. ECF No. 52. In its reply, Hartford emphasized that its summary judgment motion "is not directed to the merits of Plaintiff's claim." ECF No. 51 at 11.

The Court directed the parties to file a joint Rule 56.1 Statement setting out all facts on which the parties agree. ECF No. 54. The parties, however, informed the Court that they were unable to reach agreement regarding the contents of a joint statement. *See* ECF Nos. 58–59. Therefore, despite the Court's order, the parties failed to file a joint Rule 56.1 Statement.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citation omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact,

a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)).

"The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

## DISCUSSION

This discussion proceeds in two parts. First, the Court denies Defendant's Motion for Summary Judgment because Defendant's procedural violations deemed Plaintiff's administrative remedies exhausted. Second, the Court denies Plaintiff's Motion to Supplement, determining that she has not shown good cause for supplementation beyond the administrative record.

### I.    The Court Denies Defendant's Motion for Summary Judgment on the Basis of Exhaustion

The Court denies Defendant's Motion for Summary Judgment, in which the "only issue . . . is whether Plaintiff failed to exhaust administrative remedies." ECF No. 51 at 11. First, the Court finds that the facts surrounding exhaustion are undisputed. Based on those undisputed facts, the Court then determines that Hartford violated ERISA's claims procedure regulation, because it tolled its appeals determination deadline for only six days, then failed to properly extend its deadline. The Court concludes that Hartford's violations did deem Plaintiff's

8

administrative remedies exhausted, because they were not for good cause or due to matters beyond Defendant's control.

### a.  There Is No Genuine Dispute of Material Fact Regarding Exhaustion

Despite the parties' inability to reach agreement on a joint Rule 56.1 statement, there is no disagreement about the underlying facts of this issue. Indeed, neither of the parties contend that there is a genuine dispute of material fact with regard to the exhaustion issue. *See generally* ECF Nos. 40, 47. Instead, they agree on the salient facts, including the dates and content of the communications between the parties throughout the administrative proceedings. *Compare* ECF No. 40 at 2–8 *with* ECF No. 47 at 2–4, 9–11. And they only appear to dispute how the Court should interpret those underlying facts and the merits of Plaintiff's disability claims. *See* Pl. 56.1. For example, in her opposition, Plaintiff contends that conflicting expert assessments create genuine issues of material fact with regard to the *merits* of her claim for disability benefits, but the merits are not at issue in the present motion for summary judgment. ECF No. 47 at 22–24. The motion seeks a determination regarding exhaustion only, and the parties agree to the facts surrounding exhaustion. ECF No. 51 at 11. Therefore, the only issue is whether Defendant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### b.  Hartford Did Not Comply with Section 503-1

The Employee Retirement Income Security Act of 1974 ("ERISA") was enacted to "protect . . . participants in employee benefit plans and their beneficiaries" by establishing uniform regulations for such plans and "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Pursuant to congressional authorization under Sections 503 and 505 of ERISA, "the Department of Labor promulgated a claims-procedure regulation at 29 C.F.R. § 2560.503–1" ("Section 503-1"). *Salisbury v. Prudential Ins. Co. of Am.*,

9

238 F. Supp. 3d 444, 447 (S.D.N.Y. 2017). This regulation sets forth the procedure for the processing of a claimant's appeal of the denial of benefits. *Id.*

ERISA "does not even contain a statutory exhaustion requirement." *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006). However, in the absence of statutory language, courts have interpreted ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to provide the affirmative defense of failure to exhaust administrative remedies. *Id.* at 446. Additionally, under Section 503-1(l)(1), a claimant "shall be deemed to have exhausted" her administrative remedies if a plan fails to establish or follow claims procedures in compliance with ERISA. "The 'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006). "A plan's remedies are deemed exhausted if the plan administrator does not 'strictly adhere' to § 503-1's requirements." *McQuillin v. Hartford Life & Accident Ins. Co.*, 36 F.4th 416, 419 (2d Cir. 2022) (quoting Section 503-1(l)(2)(i)). The Second Circuit has established that

> when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless.

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 57–58 (2d Cir. 2016) (emphasis in original).

Here, Hartford issued its initial determination denying Plaintiff's November 2023 LTD benefits claim on December 11, 2023. Pl. 56.1 ¶¶ 19, 23. On June 7, 2024, Plaintiff timely appealed Hartford's adverse LTD claim determination. *Id.* ¶ 26. From this date, according to the

Plan's ERISA Information section, Hartford had "no more than 45 days after it receive[d Plaintiff's] timely appeal" to make a final decision. *Id.* ¶ 5. Therefore, if no tolling or extensions applied, Hartford's determination was due on July 22, 2024, prior to when Plaintiff filed this suit on August 29, 2024. ECF No. 1.

However, Section 503-1 and the Plan also allowed Hartford to extend this deadline "for one additional 45 day period provided that, prior to the extension, [Hartford] notifie[d Plaintiff] in writing that an extension is necessary due to special circumstances." Pl. 56.1 ¶ 5. Additionally, the Plan contained a tolling provision, which tolled Hartford's deadline to decide appeals while it awaited submission of information "necessary to decide [the] claim on appeal. *Id.* ¶ 6; AR at 39. Here, the parties dispute whether Hartford properly tolled or extended the deadline. *See* ECF Nos. 40, 47.

### i.  Hartford's Appeals Determination Deadline Was Tolled Only Between June 27, 2024, Through July 3, 2024

The parties dispute whether Hartford's deadline to issue a final determination was tolled while it awaited additional medical information from Plaintiff's neuropsychologist. Section 503-1(i)(4) provides that "the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed . . . without regard to whether all the information necessary to make a benefit determination on review accompanies the filing." However, Subsection 503-1(i)(4) also provides that an extended determination period may be tolled in the following circumstance:

> In the event that a period of time is extended as permitted pursuant to paragraph (i)(1) . . . of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

11

In *McFarlane v. First Unum Life Ins. Co.*, the court determined that tolling is not available "when the plan determines that an extension is required because a third party, but not the claimant herself, has failed to submit information necessary to decide a claim." 274 F. Supp. 3d 150, 157–59 (S.D.N.Y. 2017); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 111 (2013) (citing Section 503-1(i)(4)) (emphasis added) ("The plan's time for resolving an appeal can be tolled again if *the participant* fails to submit necessary information."). In reaching this conclusion, the court analyzed the text, structure, context, and purpose of Section 503-1(i)(4). "Read naturally, the text of Subsection 503–1(i)(4) gives 'the claimant' the key to re-starting the clock: a tolling period ends under this Subsection when the claimant—and only the claimant—responds to the plan's request for information." *McFarlane*, 274 F. Supp. 3d at 158. For those reasons, the court concluded that an administrator did not toll its deadline to decide the claimant's appeal while awaiting requested information from the plaintiff's physician, because it did not contend that the claimant herself "failed to submit any information necessary to decide her claim." *Id.* at 157.

Here, on June 27, 2024, twenty days after Plaintiff filed her appeal, Hartford sent Plaintiff's counsel a letter requesting additional information. Pl. 56.1 ¶ 28. Hartford wrote to Plaintiff requesting that Plaintiff "provide the scaled scores/standardized scores of all tests administered" by Plaintiff's neuropsychologist, as well as "[a]ny diagnosis and/or treatment records for a mental health condition for which [Plaintiff] received care for." *Id.*; AR at 81. In this letter, Hartford advised Plaintiff that Plaintiff should submit the requested information by July 7, 2024, and that if it was not submitted by that date, Hartford would proceed by starting its review on July 8, 2024. Pl. 56.1 ¶ 29.

Six days later, on July 3, 2024, Plaintiff's counsel responded, sending Hartford a letter with Plaintiff's psychological and therapy records from two of Plaintiff's other providers attached. AR at 275. Additionally, the letter stated that Plaintiff had "no objection to providing" Hartford with the requested neuropsychological testing data, but that Plaintiff's provider would only "release this raw data to another, licensed psychologist." Pl. 56.1 ¶ 30. Plaintiff's counsel "suggest[ed] that [Defendant] have its neuropsychologist contact [Plaintiff's neuropsychologist] and request that [Plaintiff's neuropsychologist's] raw data for [Plaintiff] be sent directly to [Defendant's neuropsychologist]." AR at 275. Accordingly, on July 10, Hartford wrote directly to Plaintiff's provider to advise that its "Medical Director-Neuropsychologist" was requesting the data. Pl. 56.1 ¶ 31.

On July 22, 2024, Hartford wrote to Plaintiff, stating that it required an additional 45 days to decide Plaintiff's appeal, due to the outstanding information from Plaintiff's physician. *Id.* ¶ 32. Hartford wrote that it "need[ed] to get more information from" Plaintiff's neuropsychologist, and that "[t]o speed up the process, [Hartford was] requesting this information directly" from the physician. *Id.* Hartford stated that it would continue its review as soon as it received the requested information, or by August 1, 2024, whichever came sooner. *Id.* On July 31, 2024, Plaintiff's psychologist provided the data to Hartford. *Id.* ¶ 33.

Based on *McFarlane*, at most, Hartford tolled its determination deadline until only July 3, 2024, when Plaintiff's counsel responded to Defendant's June 27, 2024 letter. *McFarlane*, 274 F. Supp. 3d at 158 n.5 (stating that Section 503-1(i)(4) "vests the claimant with unilateral authority to end a tolling period—and thus to push her appeal forward—by making any 'response,' even if that response is simply to say that the claimant refuses to provide the requested information"). After Plaintiff's counsel responded, fulfilling Hartford's request for mental health diagnosis and

treatment records and informing Hartford that it would need to obtain the data directly from Plaintiff's neuropsychologist, Hartford no longer awaited any information from Plaintiff. *See* Pl. 56.1 ¶ 30; AR at 275. Rather, Hartford only awaited information from Plaintiff's neuropsychologist, and it requested that information from him directly. Pl. 56.1 ¶ 31 ("On July 10, Hartford Life wrote to [Plaintiff's neuropsychologist] to advise that its 'Medical Director-Neuropsychologist' was requesting the test data."). Therefore, Hartford's determination was tolled for the six days in which it awaited a response from Plaintiff.

Hartford's attempts to escape *McFarlane* are unsuccessful. Hartford argues that tolling applied until July 31—when it received the neuropsychologist's data—because the Plan "made clear that the Plaintiff had the responsibility to submit the [physician's] data, and [Hartford] reiterated that in its July 22, 2024 letter." ECF No. 51 at 7, 9. Hartford's July 22, 2024 notice to Plaintiff's counsel also stated that "it's [Plaintiff's] responsibility to ensure" that Hartford received the requested neuropsychology data. Pl. 56.1 ¶ 32; AR at 98. However, Hartford's own statements make clear that its outstanding request for information was with a third party, not Plaintiff. Hartford's July 22, 2024 notice stated that Hartford could not yet make its determination on Plaintiff's appeal "because [Hartford is] waiting for information from [Plaintiff's] physician," Hartford "need[ed] to get more information" from the physician," and "[t]o speed up the process, [Hartford] request[ed] this information directly from" the physician. Pl. 56.1 ¶ 32; AR at 98.

Hartford also contends that the Court should decline to follow *McFarlane*'s tolling analysis for policy reasons. In particular, Hartford argues that "[i]f a toll under Section 503-1(i)(4) required claim administrators to refuse to assist the claimant in gathering the information necessary to decide the claim, then that is likely what they will do in the future." ECF No. 51 at

8. However, *McFarlane* does not change that ERISA requires a "reasonable inquiry" on the part of claims administrators. *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 213 (2d Cir. 2015) (quoting *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 961 (7th Cir. 2001)). Additionally, the Court agrees with *McFarlane*'s well-reasoned analysis of the "text, structure, and purpose" of Section 503-1, and concludes that it is consistent with courts' strict interpretations of Section 503-1. 274 F. Supp. 3d at 159. Fairness also requires that "a claimant's appeal is not stalled indefinitely while the plan seeks information from third parties beyond the claimant's control." *Id.*; *see also McQuillin v. Hartford Life & Accident Ins. Co.*, 36 F.4th 416, 421 (2d Cir. 2022) (stating that Section 503-1 "protects the administrator from the claimant's delays (provided the administrator has already sought an extension) but otherwise firmly limits the appeal's duration, ensuring the timely resolution of claims").

Finally, Hartford argues that Plaintiff judicially admitted to tolling in paragraphs 20–23 in the Amended Complaint. ECF No. 40 at 15. Plaintiff objects, stating that the Amended Complaint "merely reflected Hartford's asserted timeline and cannot be construed as an intentional, unambiguous concession by Plaintiff." ECF No. 47 at 19. Hartford does not rebut Plaintiff's arguments in its reply. *See* ECF No. 51 at 6–7. In any event, Plaintiff's admissions concern only the facts of what occurred—which remain undisputed. The Court does not read the Amended Complaint as Plaintiff arguing the legal position that the period was tolled under Section 503-1(i)(4).

Therefore, the Court determines that the deadline for Hartford's determination was tolled only from June 27, 2024, through July 3, 2024.

### ii.  Defendant Failed to Properly Extend its Determination Deadline by an Additional 45 Days

The Court also determines that Hartford failed to properly request a 45-day extension to its determination deadline in accordance with Section 503-1. As described above, once an appeal of a denial of benefits is filed, the plan administrator has 45 days to render a decision. Section 503-1(i)(3)(i), (i)(1)(i). However, if "the plan administrator determines that special circumstances . . . require an extension of time for processing the claim," the administrator can extend the deadline by no more than 45 days beyond the end of the initial period. Section 503-1(i)(1)(i), (i)(3)(i). To extend the deadline, the plan administrator must provide written notice to the claimant, prior to the termination of the initial period, "indicat[ing] the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review." Section 503-1(i)(1)(i).

*McFarlane* determined that the plain language of Subsection 503-1(i)(1)(i) "indicates that the plan must provide one specific date, not a range of possible dates." 274 F. Supp. 3d at 156. In that case, the plan administrator did not "specify a single 'day' by which it [would] render a decision," but instead stated that it would render its determination 45 days after it received "information from a third party beyond [the plaintiff's] control." *Id.* The court determined that this "rough timetable" was "far too uncertain" to comply with Subsection 503-1(i)(1)(i). *Id.* The court concluded that pursuant to the defendant's notice, the actual determination date could be "45 days or 45 months" from the date that it sent its notice. *Id.*

Here, Hartford provided the "special circumstances"—namely that it was awaiting medical data—that warranted the additional extension. AR at 98. However, Plaintiff argues that Hartford did not comply with section 503-1(i)(1)(i) because it did not state "the date by which the plan expects to render the determination on review" in its July 22, 2024 letter, and rather

16

provided a range of dates. ECF No. 47 at 13–17. This letter, sent 45 days after Plaintiff filed her appeal, stated that Hartford could not yet make a decision and required a 45-day extension due to its outstanding request to Plaintiff's neuropsychologist. Pl. 56.1 ¶ 32. Hartford provided that it would "continue [its] review either as soon [as it received] this information, or on 08/01/2024, whichever comes first" and would "make a decision no later than 45 days after [it] receive[d] the information" requested. AR at 98. Therefore, Hartford provided a range of dates in which it might render its determination, with a definite outer date: September 15, 2024, which was 45 days after August 1, 2024.

Hartford did comply with aspects of Sections 503-1(i)(1)(i) and (i)(3)(i). In particular, although Hartford did not explicitly specify that it would render a decision by September 15, 2024, it stated that it would "continue [its] review" at the latest by August 1, 2024, that it was implementing a 45-day extension, and that it would "make a decision no later than 45 days after" receiving the requested information. AR at 98. Therefore, the language in its July 22, 2024 letter provided a specific date by which it would render its decision at the latest. Doing so satisfies the requirement that it provide a "date by which the plan expects to render the determination on review." Sections 503-1(i)(1)(i), (i)(3)(i). The fact that Hartford indicated it might issue its decision earlier does not alter that it provided that the determination would be rendered by a definite date: 45 days after August 1, 2024. *See* AR at 98. This fact distinguishes this case from *McFarlane*, in which the plan administrator provided no end date to the tolling period, because in *McFarlane*, the administrator's review would continue *only* when it received the requested information. 274 F. Supp. 3d at 156.

However, Hartford's provided determination date, September 15, 2024, was improper. As described above, Hartford only tolled its deadline for six days at most. *See supra* 15. Even with

17

the 45-day extension, Hartford must have rendered its determination by September 11, 2024, or

96 days after June 7, 2024.[2] The chart below illustrates this timing:

| Date | Event |
|---|---|
| June 7, 2024 | Plaintiff files her appeal. Pl. 56.1 ¶ 26. |
| June 27, 2024 | Defendant requests information from Plaintiff. *Id.* ¶ 28. Tolling begins. |
| July 3, 2024 | Plaintiff's counsel responds to Defendant's request for information. *Id.* ¶ 30. Tolling ceases. |
| July 10, 2024 | Defendant requests the neuropsychological testing data from Plaintiff's physician directly. *Id.* ¶ 31. |
| July 22, 2024 | 45 days after Plaintiff filed her appeal. Defendant requests a 45-day extension, providing an outer date range by which it would provide its determination: September 15, 2024 (45 days after August 1, 2024). *Id.* ¶ 32. |
| July 28, 2024 | Without the additional extension, the date by which Hartford should have rendered its determination (51 days after Plaintiff filed her appeal, which accounts for the initial 45-day period and six days of tolling). |
| July 31, 2024 | Plaintiff's physician provides the neuropsychological testing data to Defendant. *Id.* ¶ 33. |
| August 29, 2024 | Plaintiff files the present suit in federal court. ECF No. 1. |
| September 3, 2024 | Defendant sends Plaintiff Independent Medical Reviews, and provides that Plaintiff has until September 12, 2024 to respond, or otherwise review would continue after September 13, 2024. Pl. 56.1 ¶ 39. |
| September 11, 2024 | The date by which Defendant should have rendered its decision (96 days after Plaintiff filed her appeal), if it had sent a valid 45-day extension notice on July 22, 2024. |
| September 16, 2024 | Defendant renders its determination of Plaintiff's appeal. *Id.* ¶ 44. |

---

[2] 96 days is the sum of the initial 45-day determination period, plus the six days of the tolling period and the 45-day extension period.

Therefore, Hartford did not strictly comply with Sections 503-1(i)(1)(i) and (i)(3)(i), because it requested an extension exceeding the permitted single 45-day extension.

### iii.    Hartford's Procedural Violations of Section 503-1(i) Were Not for Good Cause and Were Due to Matters Within Hartford's Control

Hartford maintains that the Court should excuse any procedural failings it committed. *See* ECF No. 46 at 11–13; ECF No. 51 at 9–10. The Second Circuit has established that

> if plans comply with [ERISA's claim procedure] regulation, which is designed to protect employees, the plans get the benefit of both an exhaustion requirement and a deferential standard of review when a claimant files suit in federal court . . . . But if plans do not comply with the regulation, they are not entitled to these protections.

*Halo*, 819 F.3d at 56. In *Halo*, the Second Circuit rejected the "substantial compliance" doctrine, in which sister circuits held that "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to *de novo* review." *Id.* (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)). Rather, the Second Circuit held that courts will review denials of claims for benefits *de novo* "unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless." *Id.* at 60–61. The Second Circuit in *Halo* gave the examples of "slight delays," including responding in "73 hours when the regulation requires that it do so in 72, or in 16 days when the regulation specifies 15," as potentially inadvertent and harmless errors. *Id.* at 57. Nevertheless, the Second Circuit cautioned that "such deviations should not be tolerated lightly" in order "[t]o prevent the exception from swallowing the rule." *Id.*

However, following *Halo*, the 2018 revisions of the ERISA regulations seemed to adopt language similar to the substantial compliance doctrine. Section 503-1(l)(2)(ii) states that:

> the administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant . . . . If a court rejects the claimant's request for immediate review under paragraph (l)(2)(i) of this section on the basis that the plan met the standards for the exception under this paragraph (l)(2)(ii), the claim shall be considered as re-filed on appeal upon the plan's receipt of the decision of the court. Within a reasonable time after the receipt of the decision, the plan shall provide the claimant with notice of the resubmission.

Here, Hartford argues that if it did violate Section 503-1, its violations do "not result in a deemed exhaustion of administrative remedies" because they fall under both *Halo*'s inadvertent and harmless exception and Section 503-1(l)(2)(ii). ECF No. 46 at 11–13; ECF No. 51 at 9. Applying the more recent Section 503-1(l)(2)(ii) standard, the Court concludes that Hartford has not demonstrated that its violations, even if *de minimis*, were not for good cause or due to matters beyond its control.

Hartford argues that its violations were "for good cause or due to matters beyond Hartford's control because [they] resulted from Hartford's need to wait for the submission of [Plaintiff's physician's] data." ECF No. 46 at 12–13. However, as discussed above, the ERISA regulations contemplate that review must begin and continue, even when administrators lack necessary information. *See* Section 503-1(i)(4) (providing that the period of time within which a benefit determination is required to be made begins "without regard to whether all the information necessary to make a benefit determination on review accompanies the filing"). Defendant's July 22 letter stating that it would continue review by August 1, even if Plaintiff's

physician had not yet provided the neuropsychological data, confirms that Plaintiff's data was not necessary to its determination. *See* AR at 98. Therefore, waiting on a physician's information, which is commonplace in insurance administrative proceedings, does not constitute good cause or a matter beyond Hartford's control that justifies the violations of the ERISA regulations. Even while Hartford awaited information from a third party, it was within its control to manage the administrative process and set the deadline for when it would make its determination. Hartford failed to properly do so. Accordingly, Hartford's violations deemed Plaintiff's administrative remedies exhausted.

**II.     The Court Denies Plaintiff's Motion to Supplement the Administrative Record**

Plaintiff seeks to supplement the administrative record in this case with live testimony at a trial. In particular, she requests that the Court allow for live testimony at trial from herself, her husband, and her neuropsychologist. ECF No. 45 at 1.

"The administrative record consists of the documents before the claims administrator when the decision regarding benefits was made." *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 505 (S.D.N.Y. 2015), *aff'd* 644 F. App'x 81 (2d Cir. 2016) (citation omitted). "[T]he presumption is that judicial review 'is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'" *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (quoting *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 67 (2d Cir. 1997)).

There are typically two circumstances that can potentially give rise to good cause for a district court to consider additional evidence. The first is where there is a demonstrated conflict of interest. *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011). Typically, this conflict exists when a plan administrator both evaluates and pays

benefits claims. *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 114 (2008). However, a conflict of interest like this does not "*per se* constitute 'good cause' to consider evidence outside the administrative record, but it can rise to the level of 'good cause' when bolstered by specific allegations." *Puri v. Hartford Life & Acc. Ins. Co.*, 784 F. Supp. 2d 103, 106 (D. Conn. 2011); *see also S.M.*, 94 F. Supp. 3d at 499 ("A structural conflict, standing alone, is insufficient to establish that a conflict of interest actually influenced [an administrator's] decision to deny benefits."). The second circumstance courts recognize is where a plan fails to comply with claims-procedure regulations. *Halo*, 819 F.3d at 45. As with a conflict of interest, a procedural violation does not *per se* constitute good cause. *Id.* at 60. Instead, under either circumstance, courts find good cause "when they have concerns about fairness and adequacy of the procedures used to develop the record." *Provident Life & Accident Ins. Co. v. McKinney*, No. 19-CV-1325 (SVN), 2022 WL 625731, at *3 (D. Conn. Feb. 7, 2022) (quoting *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 235 (D. Conn. 2018)).

Here, Plaintiff argues good cause exists because of: (1) a structural conflict of interest—namely, that Hartford acts as both claims administrator and payor; and (2) Hartford's procedural deficiencies, because Hartford failed to issue a timely determination on Plaintiff's administrative appeal. ECF No. 45 at 8–13; ECF No. 52 at 8–10. Neither argument succeeds because Plaintiff has not shown that either failing has "adversely affected the development of the administrative record." *Halo*, 819 F.3d at 60.

First, it is undisputed that Hartford is both Plaintiff's claim administrator and payor. *See* ECF No. 46 at 15; *see also Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004) (stating that "claims reviewers and payors are almost always either the same entity or financially connected in some other way"). However, as established above, this structural

conflict of interest is not sufficient alone to constitute good cause, and Plaintiff here fails to identify procedural errors or any other specific failings that exacerbated the conflict of interest. In fact, Plaintiff has not identified in any way how the administrative record is incomplete. *See Puri*, 784 F. Supp. 2d at 106; *Halo*, 819 F.3d at 60 (establishing "that good cause to admit additional evidence may exist if the plan's failure to comply with the claims-procedure regulation adversely affected the development of the administrative record").

Second, the procedural deficiencies the Court found above do not warrant expansion of the record. Although the Court has determined that Hartford failed to properly extend its appeal determination deadline, this failure did not affect the admission of evidence into the administrative record. Plaintiff does not identify any evidence that would have been submitted into the record but for Hartford's failure to render a timely determination, except for a timely determination itself. *See* ECF No. 52 at 3. In fact, Defendant's ultimate determination *is* in the administrative record, AR at 2431–33, and as Defendant notes, the live testimony Plaintiff requests would not remedy the lack of a timely determination. ECF No. 46 at 16.

Lastly, Plaintiff admits that the requested testimony would "not inject new factual material into the record," and rather would allow the Court "to assess credibility" and "clarif[y] and contextualize[] evidence already submitted during [Plaintiff's] administrative appeal." ECF No. 52 at 9–10. There is not good cause to supplement the administrative record when the requested supplemental evidence already exists in the record. *See Muller*, 341 F.3d at 125–26 (finding that good cause did not exist to supplement the record when the administrator had already discussed the claimant's case with the two treating physicians whose testimony was to be introduced). Additionally, the Second Circuit has established that even when "genuine issues of material fact exist in [an ERISA] case and its resolution depends, in part, on credibility

23

determinations," the district court "may decline to consider any evidence," including live testimony, to reach its result. *Napoli v. First Unum Life Ins. Co.*, 78 F. App'x 787, 789–90 (2d Cir. 2003). The Court finds no basis to consider credibility evidence here.

Accordingly, Plaintiff has not shown good cause to supplement based on a conflict of interest or procedural error affecting the development of the administrative record, and the Court denies Plaintiff's motion.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED and Plaintiff's Motion to Supplement the Administrative Record is DENIED.

The Court directs the parties to submit a joint letter by **April 7, 2026**, setting forth a proposed briefing schedule for a bench trial on the papers.

The Clerk of Court is respectfully directed to terminate ECF Nos. 39 and 44.

Dated: March 24, 2026
      White Plains, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

24